## No. 475.

### SUCCESSION OF GEORGE W. WOMACK.

An administrator who received Confederate money in payment of succession property sold by him, when that money was the currency in general circulation, can only be held for what the money he received was at that time worth in gold.

APPEAL from the Parish Court, parish of Ouachita. *Baker*, J.

*H. P. Wells*, for plaintiff and appellee.

*Cobb & Gunby*, for accountants.

*Robert J. Caldwell* and *R. W. & R. Richardson*, for opponents.

The opinion of the court was delivered by

WYLY, J. In August, 1862, George W. Womack died, leaving a small succession, consisting of movables, inventoried at $450 70, and immovables, appraised at $1122 02. Charles Delery was appointed adminis-

trator, and, under order of court, he sold all the movables, except a few articles, for the aggregate sum of $730 55. In May, 1872, Delery died without having rendered an account of his administration. Mrs. Delery and H. M. Bry, the executors of the last will and testament of Charles Delery, under order of court, filed his final account in the succession of Womack, which was opposed by the heirs at law of the deceased. As to the immovable property tendered by the accountants, there is no controversy, the heirs agreeing to accept. As to the one hundred and fifty dollars Confederate notes, inventoried as the property of the deceased, the administrator need not account, because they were not valid obligations; indeed, they are not property. The administrator is chargeable with the value of a note of the railroad company $23, specie $21, and the debt of Weaver on Hunsacker $20; also with the inventoried value of a bridle $2 50, not sold or accounted for, amounting in the aggregate to $66 50; which, added to the proceeds of sale of personal property $730 50, amounts to $797 05. From this must be deducted $402 47, the aggregate amount of debts paid by the administrator or his representatives, leaving a balance of $394 58 due by the administrator. The objection that the shotgun and part of a barrel of sugar in the inventory are not accounted for is not well founded; they are embraced in the sale of the personal property.

The accountants have the right to charge the succession of Womack with the clerk's costs and the fee of the attorneys in making out the final account, no other fees of counsel having been charged.

The charge of seventy-five dollars for a coffin for the deceased is not unreasonable, and is allowed as an item in the credit herein given.

The item of thirty-six dollars, the amount of expenses in sending Jesse Womack, one of the heirs, to Georgia, is not chargeable to the estate; it is an individual debt due by him, and for which the other heirs can not be charged.

The accountants contend that the personal property sold at Confederate prices and the proceeds of the sale were Confederate notes, therefore the succession of Delery ought not to be condemned to pay over to the succession of Womack the $394 58, the balance due for and on account of said proceeds. To this the answer is that the proof does not show that Delery received Confederate notes;· nor that the court authorized him to do so. But, assuming that the order at the time requiring him to sell the personal property of Womack impliedly authorized him to receive in payment thereof Confederate notes, because there was no other currency, still, to get relief on account thereof, it devolved upon the administrator to tender the identical notes which he received at said sale; and this has not been done.

Suppose an administrator during the war had sold the personal prop-

erty of the succession confided to his administration for Confederate notes, and afterward used said notes in his business, in paying his individual debts, or otherwise invested it, deriving great benefit therefrom, would he be heard setting up as a ground of defense that the proceeds of the sale of the personal property of the succession were Confederate notes, and that he is not responsible to the heirs? We think not.

The three Confederate notes of one hundred dollars each, attached to the record and tendered to the heirs, are not shown to have been the identical notes received by Delery at the sale of the personal property of this succession. Our conclusion is that there should be judgment against the succession of Delery in favor of the succession of Womack for $394 58.

It is therefore ordered that the judgment of the court *a qua* in favor of opponents for $118 36 be amended by increasing the amount thereof to $394 58, and, as amended, that it be affirmed, appellee paying costs of appeal.

The Chief Justice was recused in this case.

---

## On Rehearing.

The opinion of the court was delivered by

Manning, C. J. Womack died in August, 1862. Delery became his administrator, and obtained from the court an order to sell his movable property. It was sold, and realized more than its appraised value in the inventory. The bids at the sale were paid in Confederate treasury notes. The debts of the deceased and of his succession were paid in the same currency, and the administrator died before his account was rendered. Delery's executors filed the account of their testator's administration, showing a balance of near three hundred dollars due the heirs of Womack, and they present that amount in Confederate currency, along with the account, averring that they discovered a paper containing an inclosure of that sum among the papers of the deceased, Delery, which was supposed to be the proceeds of the succession sale of Womack. The object of the opponents is to compel the payment of this sum in the present currency of the nation.

There is no imputation of bad faith to the administrator. It is not charged, nor contended, that Delery used the currency received by him at the succession sale for his own purposes, and afterward replaced it by other like currency at a later period. Neither is it disputed that Confederate treasury notes were the only currency in use in the parish of Ouachita at the time of the sale. Objection was made to the admission of proof to establish that fact, but the fact itself is undisputed. A bill

of exceptions states the ground of objection to be that the executor can not be permitted to prove the existence or use of any money in discharge of debts at that time, except United States currency, nor that Confederate currency was the currency of the country at that time, as it was issued in violation of the laws of the United States.

These and similar objections are based upon the idea that courts must shut their eyes and ignore events that have stirred the world to its remotest recesses; that while all humanity has attested its interest in the historical occurrences that were transpiring at that time, judicial blindness must be affected or assumed, as to those occurrences, by those who are called on to determine the legal consequences of the acts of individuals in the midst of these events.

It was properly proved in this case, and was admitted by both counsel, that Confederate money was the sole currency of that part of the country where these proceedings were had at that time, and that this currency was then worth one third its face in gold. The highest judicial tribunal of our country has sanctioned the doctrine of common sense and common honesty which requires that obligations, made under the exceptional *régime* of the Confederate States, should be enforced with due regard to the surroundings of the contracting parties, and in accordance with their manifest intent; and, in assessing their moneyed value, that the value of Confederate currency at the time of the transaction should be the standard that regulates the judgment of the court. Thorington vs. Smith, 8 Wal. 1; Delmas vs. Merch. Ins. Co., Wal.

The lower court adopted this rule in the present instance, but there is another element which enters into this case which would entitle the administrator to entire relief if it had not been abandoned. The sale of the movables was a necessity. Witnesses say they or their value would have been lost if they had not been sold. There was but one currency in which the administrator could be paid at that time. The court that ordered the sale knew that. No other money would have been permitted to pass current by the government that dominated the country where these proceedings took place, and the use of force was not needed to effectuate this public policy. A spontaneous and clamorous public sentiment supplemented and supported the financial policy of that government. The administrator could have done nothing but receive the Confederate currency, and there is no pretense that he derived advantage from its use. It perished in his hands. He ought not to be held responsible for it. No appeal, however, was taken by the representative of the succession from the judgment of the lower court, and, besides, relief to that extent was abandoned in the oral argument.

There is error both in the account as stated by the judge *a quo* and by the decree of our predecessors. The railroad note, the specie, and the

Succession of Womack.

Hunsacker draft, were all charged against the administrator on the account rendered for him. They were included in the inventory, and the gross sum of the assets as therein appraised was charged against him, as well as the excess above that, realized by the sale. The item of thirty-six dollars expended in sending one of the heirs away is not chargeable to the common fund, but should be deducted from his distributive share of the estate.

The account is thus re-stated:

Assets, exclusive of land not sold ........................ ............$730 55
Debts paid, less item of $36 ................................. 349 47
                                                                      ————
                                                                      $381 08

which is reduced to $127 02, the proportion in value of the Confederate currency to gold being three to one.

It is therefore ordered, adjudged, and decreed that the judgment heretofore rendered be set aside, and that the judgment of the lower court be amended by inserting $127 02 as the balance due the heirs by the administrator, instead of the sum therein stated; and, further, that the distributive portion thereof to which Jesse Womack is entitled be charged with thirty-six dollars paid for his individual use, and as thus amended that the judgment of the lower court is affirmed, the opponents and heirs to pay costs of appeal.